UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X

CRYSTAL DAVIS,  Individually and on
Behalf of All Other Persons Similarly Situated,

                           Plaintiffs,

          v.

FOOTBRIDGE ENGINEERING SERVICES,
LLC and THE FOOTBRIDGE COMPANIES,
LLC,

                      Defendants.

C.A. No. 1:09-cv-11133

-------------------------------------------------------------X

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION AND NOTICE TO POTENTIAL CLASS MEMBERS AND
TO EQUITABLY TOLL THE STATUTE OF LIMITATIONS**

FOOTBRIDGE ENGINEERING SERVICES, LLC
THE FOOTBRIDGE COMPANIES, LLC

Douglas J. Hoffman (BBO # 640472)
William J. Anthony (Pro Hac Vice)
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025; (617) 367-2155 (fax)
hoffmand@jacksonlewis.com
anthonyj@jacksonlewis.com

Dated: June 15, 2010

Defendants Footbridge Engineering Services, LLC and The Footbridge Companies, LLC ("Defendants" or "Footbridge"), by and through their undersigned counsel, file their Opposition to Plaintiff's Motion for Conditional Certification and Notice to Potential Class Members and to Equitably Toll the Statute of Limitations (the "Motion"), as follows:

## PRELIMINARY STATEMENT

In this purported collective action brought pursuant to the Fair Labor Standards Act ("FLSA"), Plaintiff asks this Court to conditionally certify an action consisting of employees nationwide who occupy at least six different job positions and have varying job duties.  Because Plaintiff seeks to certify numerous job titles and different job duties in the same class, conditional certification is not appropriate here.  Plaintiff believes that because Footbridge made a decision to change its payroll practices after this action was filed and began paying certain of its employees time and a half for overtime, all such employees should be combined in a collective action.  The mere fact that Footbridge changed its payroll practices, however, does not warrant conditional certification, nor does it constitute an admission that Footbridge's previous policy violated the FLSA as Plaintiff would ask this Court to believe.

Even if the Court were to conditionally certify this action, any notice process must take into account the fact that Plaintiff's counsel has already mailed its own notice to each and every class member and also followed up in many instances with telephone calls, resulting in numerous opt-ins.  It has also come to light that Plaintiff's counsel has evidently made false statements to at least some of these individuals in an effort to convince them to opt in to the case.  As a result, it would be entirely appropriate for the Court to decline to issue notice, as Plaintiff took it upon herself to do so.  In the alternative, the Court should strike all consent forms filed to date, and issue a corrective notice in response to Plaintiff's counsel's misrepresentations to Footbridge's employees.  At a minimum, because these individuals have already had at least a month to opt in to this action since Plaintiff mailed her notice, any additional notice period may be truncated to account for this fact.

1

Plaintiff also argues, contrary to standard FLSA procedure, that the statute of limitations for all potential members of this collective action should be suspended as of the date of the Complaint pursuant to the rarely-used doctrine of equitable tolling.  Each justification suggested by Plaintiff for equitable tolling is meritless.  Defendant's objection to providing class member contact information prior to conditional certification does not justify equitable tolling according to the vast majority of courts to consider this argument.  Plaintiff also claims that Footbridge's alleged failure to comply with FSLA posting requirements justifies equitable tolling.  Any such failure would not, in fact, justify equitable tolling.  Regardless, Footbridge was in full compliance with FLSA posting requirements, as explained herein.  Finally, Plaintiff claims that equitable tolling is appropriate for the entire class based on three alleged misstatements Footbridge supposedly made to employees regarding their right to overtime.  Footbridge has no record of these conversations, as these employees do not identify with whom they spoke.  Any such statements would be nothing more than a reflection of Footbridge's good faith belief that the employees were exempt from the FLSA's overtime requirements.  This falls far short of the intentional misconduct necessary to justify equitable tolling.  Moreover, alleged statements made to three individuals cannot possibly justify equitable tolling as to an entire class.

## ARGUMENT

### I.     PLAINTIFF IS NOT ENTITLED TO CONDITIONAL CERTIFICATION.

#### A.     The Relevant Legal Standard

To bring a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), a plaintiff must prove he is "similarly situated" to those he seeks to represent.  29 U.S.C. § 216(b); see Hoffmann La Roche v. Sperling, 493 U.S. 165 (1989).  Courts typically utilize a "two-step" approach to determine whether a plaintiff has met this burden.  Id.; O'Donnell v. Robert Half Int'l., 429 F. Supp. 2d 246, 249 (D. Mass. 2006); Trezvant v. Fidelity Employer Services Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006).  Plaintiff asserts that, this being the initial step, she need only make "substantial

allegations that the class members were subject to a single … plan."[1]   However, this proposition has been "roundly rejected" by courts across the country, including the District of Massachusetts.  Trezvant, 434 F. Supp. 2d at 43.  Mere allegations that all Plaintiffs "were victims of a common policy or plan that violated the law," "are not sufficient."  Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519 (D. Md. 2000) (citing Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 406-07 (D.N.J. 1988)).

Moreover, in this case, unlike most FLSA collective actions, discovery was not bifurcated between certification and merits issues.  Plaintiff has contacted all putative class members, solicited consent forms, and had an opportunity to conduct any other desired discovery.  Where the parties have engaged in protracted discovery, the two-step process generally is not followed and the Court will review the motion for conditional certification under a stricter standard generally applicable to step two. Stephenson v. Info. Providers, Inc., 2010 U.S. Dist. LEXIS 52261, at *10-11 (D. Minn. May 7, 2010) ("where there has already been extensive discovery or a significant number  of potential plaintiffs have already filed consent forms to join the lawsuit, courts impose the more stringent standard") (quotations omitted); Hendricks v. J.P. Morgan Chase Bank, N.A., 263 F.R.D. 78, 83 (D. Conn. 2009); White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000).  Accordingly, a far more onerous standard should be applied to Plaintiff's motion.

### B.   Plaintiff Does Not Meet the Requirements of Conditional Certification.

#### 1.   Footbridge's Change in Overtime Policy Cannot be Considered as to do so Would Violate the Federal Rules of Evidence and is Irrelevant to Plaintiff's Request for Conditional Certification.

Plaintiff's Motion, which requests conditional certification of a class consisting of individuals who work at various job sites throughout the United States, with at least six different job titles and varying job duties, is largely a premature offensive on the merits of this case.  Plaintiff supports her

---

[1]  Plaintiff's Memorandum in Support of Her Motion for Conditional Certification and Notice to Potential Class Members and to Equitably Toll the Statute of Limitations ("Davis Mem."), at 6-7.

request by noting that Footbridge changed its payroll policies in 2009 to provide time and a half for overtime for the purported class members.  Plaintiff then wrongly presumes that this change in payroll practices constitutes an admission that Footbridge had previously been in violation of the FLSA, and that therefore, conditional certification is appropriate.  Davis Mem. at 13.

The simple fact that Footbridge began paying certain hourly employees time and a half for overtime does not constitute an admission of an FLSA violation.  The Federal Rules of Evidence state: "[w]hen, after … harm allegedly caused by an event, measures are taken that, if taken previously, would have made the … harm less likely to occur, evidence of the subsequent measures is not admissible to prove … culpable conduct …"  Rule 407 "supports the public policy of preventing a party from being punished for making positive changes" and "rejects the notion that 'because the world gets wiser as it gets older, therefore it was foolish before.'"  Carda v. E.H. Oftedal & Sons, Inc., 2005 U.S. Dist. LEXIS 26375, at *3 (D.S.D. Mar. 23, 2005) (citing Fed. R. Evid. 407 advisory committee's note).  Accordingly, in FLSA cases, an employer's modification of pay practices post-suit is not relevant to liability before the lawsuit.  Liger v. New Orleans Hornets NBA Limited Partnership, 2008 U.S. Dist. LEXIS 9098, at *7 (E.D. La. Feb. 6, 2008) ("[E]vidence of [Defendant's] post-lawsuit compliance with the FLSA is not relevant to determining whether [Defendant] can claim the exemption during the period of time before the lawsuit was filed."); Carda, 2005 U.S. Dist. LEXIS 263375, at *3 (evidence that an employer had changed its overtime polices post-suit was held irrelevant to employer's liability).  Therefore, it would be improper for this Court to consider Footbridge's subsequent remedial actions in deciding this motion.

More importantly, at all relevant times, Footbridge believed (and continues to believe) that the Plaintiff and its other hourly employees were exempt from the FLSA's overtime requirements pursuant to the Computer Professional exemption.  This belief was based on Footbridge's understanding of the FLSA as well as its understanding of industry standards.  Todd Springer Deposition Transcript

("Footbridge Tr.") at 20-22, 85, 120-22.[2]   This belief was also reasonable, as Plaintiff Davis, for example, spent up to 80% of her time working with a highly complex software program called Primavera, the use of which required specialized training.   Crystal Davis Deposition Transcript (Hoffman Decl., Ex. B) at 30; Footbridge Tr. at 20-22.   After re-examining this situation following the filing of this matter, although it still believes these employees could be viewed as exempt, Footbridge decided that the safer practice was to pay these employees time and a half for overtime.   Footbridge Tr. at 20-22.   However, this cannot and does not constitute an admission that these individuals are not exempt.   As a result, Plaintiff is left with sparse evidence to support her motion.

     **2.**     **Plaintiff Has Not Established that She is Similarly Situated to the Rest of the Purported Collective Action Members.**

As stated above, Plaintiff asks the Court to conditionally certify a collective action consisting of individuals who work at various sites throughout the United States, with at least six different job titles and varying job duties.   Davis Mem. at 13.   Meanwhile, Plaintiff worked in only one location and had limited or no contact with other Footbridge employees, nor could she have had knowledge of the duties performed by other purported class members.   O'Donnell, cited above, is instructive here.   In O'Donnell, an employee worked for a seven month period in a single office of an employer that maintained offices throughout the country.   O'Donnell, 429 F. Supp. 2d at 250.   The Court denied conditional certification due to this employee's lack of knowledge regarding the employer's practices in other offices.   Id.   As in O'Donnell, Plaintiff worked in only one job location, and had no contact with other class members, and therefore has no knowledge of their job duties.[3]   Moreover, the affidavits submitted by other purported class members do not establish that they performed the same job duties as

---

[2] Relevant portions of this transcript are attached to the accompanying Declaration of Douglas J. Hoffman ("Hoffman Decl.") as Exhibit A.

[3] Nevertheless, Plaintiff still admits that based on her limited knowledge, the job duties of the various employees included in the purported class differ.   See Davis Tr. at 32-33 (job duties of "planners" and "schedulers" are "completely" different).

Plaintiff.   They contain no description of their job duties whatsoever other than to allege that they worked with a computer, but did not design or develop software.[4]   Those assertions are simply legal conclusions unworthy of the Court's consideration.   In fact, courts often strike such broad brush, conclusory statements from affidavits.  See Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2nd Cir. 1999) (striking those portions of plaintiffs' affidavit consisting of hearsay, conclusory statements and arguments, and information not based on affiant's personal knowledge); Lachira v. Sutton, 2007 U.S. Dist. LEXIS 33250, *5 (D. Conn. May 7, 2007) (striking portions of affidavit which contained "inadmissible hearsay, generalized conclusory and argumentative statements, legal conclusions, information which could not be attributed to plaintiff's personal knowledge . . . ").

Although Courts typically do not review the merits of the claim in connection with the motion for conditional certification, Plaintiff bases the majority of her argument on her perception of the merits of her claim.   Further, some courts do review the merits of a claim in deciding whether to conditionally certify a collective action.  Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (stating that the Court would "scrutinize the merits" to the extent necessary to address the plaintiff's motion for authorization of FLSA notice).   Examining the elements of the Computer Professional Exemption demonstrates that conditional certification is not appropriate here.   This extremely broad and complicated exemption covers a wide range of computer-related job positions.[5] Since the application of the Computer Professional exemption depends on the job duties of the employee, an individual inquiry must be made as to each employee to determine whether their job duties

---

[4] See e.g. Affidavit of William Bevard (Dkt. No. 33) at ¶3.

[5] The exemption covers any employee who is "a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications; (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications; (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $ 27.63 an hour." 29 U.S.C. § 213(a)(17).

fall within the complicated description above.  Under these circumstances, conditional certification is not appropriate.  See Aguirre v. SBC Communications, Inc., 2007 U.S. Dist. LEXIS 17259, at *43 (S.D. Tex. Mar. 12, 2007) ("the fact-intensive nature of the exemption analysis," among other things, was sufficient to deny preliminary collective action certification).[6]

Plaintiff's proposed class is also overbroad, as it would include hourly employees who were paid time and a half for overtime.  Davis Mem. at 12.  As conceded in Plaintiff's papers, Footbridge paid time and a half for overtime when its clients insisted.  Davis Mem. at 7-8; Footbridge Tr. at 26. Moreover, any employees guaranteed $45.5 per week may be paid straight time for overtime hours.  29 Code of Fed. Reg., §551.604.  Accordingly, this purported class may include some people who were paid consistent with the FLSA requirements.  An individualized inquiry is necessary to determine these circumstances.

## II.      EVEN IF THE COURT DECIDES TO CONDITIONALLY CERTIFY THIS ACTION, ANY NOTICE PLAN MUST ACCOUNT FOR PLAINTIFF'S UNILATERAL CONTACTS WITH FOOTBRIDGE EMPLOYEES.

Even if the Court were to grant Plaintiff's motion for conditional certification, the Court should strike the consents previously filed or decline to issue a separate notice because Plaintiff's counsel has already distributed its own unilateral notice both in writing and by telephone.

In discovery, Plaintiff requested the contact information for all of Footbridge's hourly employees, as well as their individual payroll records and personnel files.  Plaintiff wanted this information so that her counsel could perform a damage calculation for each individual, contact that person, and use the damage information to solicit that individual to file a consent to sue form. Footbridge objected to these requests in light of numerous cases holding that an FLSA plaintiff is not

---

[6] See also McElmurry v. US Bank Nat'l Ass'n, 2006 U.S. Dist. LEXIS 89875, at *15 (D. Or. Dec. 8, 2006) ("certification may be denied in an overtime exemption case if it requires a fact-specific and individualized inquiry into each employee's daily job duties."); Diaz v. Electronics Boutique of Am., Inc., No. 04-0840, 2005 WL 2654270, at *2 (W.D.N.Y. Oct. 17, 2005) ("Determining whether an employee is exempt is extremely individual and fact-intensive . . . ."); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (individualized questions as to administrative exemption warranted denial of preliminary FLSA certification).

entitled to contact information, or payroll information, for potential class members until after conditional certification.  See Defs' Opp. to Pltff's Mot. to Compel (Dkt. No. 24), at 5 and n 3 (citing, e.g. Burkhart-Deal v. CitiFinancial, Inc., 2009 U.S. Dist. LEXIS 85701, at *1-3 (W.D. Pa. Sept. 18, 2009); Stephens v. Erosion Containment Mgmt., 2008 U.S. Dist. LEXIS 40986, at *1-3 (M.D. Fla. May 21, 2008)).  See also Kane, 138 F. Supp. at 215.  These decisions followed the Supreme Court's guidance in Hoffmann-La Roche, which made clear that notice to potential members of a collective action should be a Court-controlled process.  Hoffmann-La Roche, 493 U.S. at 170-72 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.").  Accordingly, courts have held that plaintiffs may not unilaterally contact other individuals to join a collective action pursuant to 29 U.S.C. § 216(b) prior to certification of the collective action.  Cintron, 363 F. Supp. 2d at 17 (holding that consent to sue forms filed as a result of premature contact by plaintiff's counsel should be stricken, as "[t]he trial court must first authorize whether the alleged class should be provided with notice"); Bouder v. Prudential Financial, Inc., 2007 U.S. Dist. LEXIS 83338, at *5-6 (D.N.J. Nov. 8, 2007) ("before an individual plaintiff may give notice to other potential class members of their right to opt-in as a party to an FLSA lawsuit, the district court has the discretionary authority whether to approve the notification of the putative class members").

Clearly opposed to Plaintiff's proposed unilateral notice strategy, the Court denied the majority of Plaintiff's motion to compel, ruling that Footbridge need not turn over detailed wage information or personnel files for these individuals.  See Order dated April 27, 2010.  The Court only ordered Footbridge to produce contact information, which Footbridge promptly did.  Subsequently, Footbridge's fears regarding Plaintiff's contacts with purported class members were realized.  On or about May 11, 2010, Plaintiff's counsel sent a form letter to all potential class members informing them of the action and providing contact information for Plaintiff's counsel.[7]  In addition, Plaintiff's counsel spoke to

---

[7] A sample of this letter is attached to the accompanying Declaration of Todd Springer ("Springer Decl.") as Exhibit B.

individuals over the telephone and evidently used this opportunity to solicit them to opt in to the action. Springer Decl. ¶¶ 8-13. Following the mailing of this letter and the subsequent telephone calls, approximately 10 individuals have opted in to the suit.

More troubling is the fact that Plaintiff's counsel has attempted to convince potential class members to opt in to the action through coercion and false statements. Id. According to at least one individual, Plaintiff's counsel encouraged her to opt in to the above-captioned action by telling her that a Footbridge executive's previous business was sued for a violation of the FLSA, and that this executive therefore must have known that Footbridge was breaking the law. Id. ¶ 9. As stated in the Springer Declaration, as well as the Declaration of Rich O'Donnell ("O'Donnell Decl."), this statement is patently false. Id. ¶ 12; O'Donnell Decl. ¶ 5. Footbridge has no way of knowing how many others received this false information.[8] In addition, Plaintiff's counsel has repeatedly harassed certain individuals over the telephone, and threatened to subpoena them if they do not agree to submit affidavits in support of conditional certification. Springer Decl. ¶ 13.

Based on this premature solicitation of opt-ins, the Court should strike all consent-to-sue forms filed to date. For example, in Cintron, the plaintiff solicited other individuals to join a collective action and filed approximately 98 consent to sue forms prior to the court's certification order. The Court granted the defendant's motion to strike the consent to sue forms because the court had not yet determined that putative class members should be provided with notice. 363 F. Supp. 2d at 17. Cintron is consistent with the holdings of other courts that have addressed this issue. In Bouder, prior to filing a motion for conditional class certification, plaintiff notified the defendant of their intent to send a letter and "Consent to Sue" forms to potential collective action members. 2007 U.S. Dist. LEXIS 83338, at *3. The court ordered the plaintiffs and their counsel to cease their attempted communications with the

---

[8] Notably, in her papers, Plaintiff does not make this same allegation. This raises the issue of whether or not Plaintiff's counsel knows this assertion to be false. Had Plaintiff's counsel believed this allegation to be true, they presumably would have included this assertion in their motion.

putative class members.  Id. at *5-6.  Accordingly, it would be entirely appropriate for this Court to strike the consent forms filed to date in this action and issue a Court-approved notice.[9]

If the existing opt-ins are not stricken, however, there is no justification for allowing Plaintiff to distribute yet another notice to the purported class members.  Plaintiff has already distributed her own notice, mailed multiple times to individuals and followed up with telephone calls.  Accordingly, there is no reason for the Court to approve a second notice, other than a corrective notice informing individuals that they may have received false information from Plaintiff's counsel, and providing them an opportunity to withdraw their consent to sue forms.  Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 164 (N.D.N.Y 2008) ("misleading communications" during the notice process "may be countered by court-authorized notice") (quoting Hoffmann-La Roche, 493 U.S. at 171-72).

At a minimum, since it has been over a month since Plaintiff's unauthorized notice was mailed, even if the Court believes another notice is appropriate, any additional notice period should be truncated.  An additional 30 days for individuals to opt in to the action would be more than sufficient to allow individuals to file consent forms.  Again, however, any such notice must contain corrective information to correct misstatements being made by Plaintiff's counsel.  Regardless of any other action taken by the Court, based on their misleading and harassing conduct toward potential class members, Plaintiff's counsel must be enjoined from further direct contact with purported class members, other than in the form of a Court-approved notice.  Defendants will address this in a separate motion.

**III.     EQUITABLE TOLLING IS NOT APPROPRIATE IN THIS CASE.**

**A.     Equitable Tolling is An Extraordinary Remedy That is Invoked Only In Rare Circumstances.**

As Plaintiff concedes, FLSA collective actions rely on an "opt-in" scheme in which potential plaintiffs must affirmatively notify the court of their wish to join the collective action.  Utilizing an opt-in mechanism in FLSA cases was a conscious choice by Congress "in response to 'excessive litigation

---

[9] These individuals would, of course, have the right to renew their consent after receiving a court-approved notice.

spawned by plaintiffs lacking a personal interest in the outcome,' in order to limit 'private FLSA plaintiffs to employees who asserted claims in their own right,' and to free 'employers from the burden of representative actions.'" In re Am. Family Mut. Ins. Co. Overtime Pay Litig., 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009), quoting Hoffmann-La Roche, 493 U.S. at 173.  As Plaintiff also concedes, the statute of limitations for FLSA plaintiffs does not stop running until the plaintiff files a consent to sue notice with the Court.  Davis Mem. at 16.  See also Cintron, 363 F. Supp. 2d at 14 ("All opt-in members who seek relief under FLSA must submit their consent before the statute of limitations has run.").  Nevertheless, Plaintiff would have this Court depart from this long-recognized rule and "equitably toll" the statute of limitations for all purported class members from the date the Complaint was filed.

"Equitable tolling is available 'in exceptional circumstances' to extend the statute of limitations." Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 71 (1st Cir. 2005) (quoting Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004)).  The doctrine is applied only in "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003) (citation omitted).  Equitable tolling is appropriate where the complainant has "been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  Irwin v. Dep't. of Veterans Affairs, 498 U.S. 89, 96 (1990) (emphasis added).  See also Tidd v. Adecco USA, Inc., 2008 U.S. Dist. LEXIS 69825, at *16-17 (D. Mass. Sept. 17, 2008) ("Equitable tolling is to be invoked only in rare circumstances.") (citing Vistamar, 430 F.3d at 71; see also Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001) ("[E]quitable tolling, if available at all, is the exception rather than the rule" appropriate only "in extraordinary circumstances.").  The Plaintiff bears the burden to prove that equitable tolling is appropriate. Neverson, 366 F.3d at 42 (holding that the party seeking to invoke equitable tolling bears the burden of establishing the basis) (citing Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002)).

In the First Circuit, equitable tolling requires active misconduct by the defendant.  <u>Vistamar</u>, 430 F.3d at 72 ("Federal law [regarding equitable tolling] requires a showing of 'excusable ignorance of the statute of limitations ***caused by some misconduct of the defendant***.'") (emphasis added) (citing <u>Benitez-Pons v. Commonwealth of Puerto Rico</u>, 136 F.3d 54, 61 (1st Cir. 1998);  <u>Commonwealth v. Bull Info. Sys.</u>, 143 F. Supp. 2d 134, 156 (D. Mass. 2001) (holding in an ADEA action that if the employer "knowingly or deliberately withheld critical information" from its employees regarding their potential claims, equitable tolling could be appropriate).  Ignoring First Circuit precedent by citing two cases from outside this Circuit, Plaintiff asserts that the employer's conduct need not be the result of bad faith or intentional deception in order to justify equitable tolling.  Davis Mem. at 19 (citing <u>Kamens v. Summit Stainless, Inc.</u>, 586 F. Supp. 324, 328 (E.D. Penn. 1984); <u>Ke v. Saigon Grill</u>, 595 F. Supp. 2d 240, 259 (S.D.N.Y. Oct. 21, 2008)).  However, this assertion is contradicted by Plaintiff's own case law from within the First Circuit.  <u>Ruffino v. State Street Bank and Trust Co</u>, 908 F. Supp. 1019, 1041 (D. Mass. 1995) (equitable tolling requires that a plaintiff rely on an employer's "misleading representations" and also evidence of the employer's "improper purpose").  As explained herein, Footbridge has not engaged in any conduct that could justify equitable tolling for the purported class.

### B. Footbridge's Reasonable Objections to Plaintiff's Discovery Requests Do Not Constitute Grounds for Equitable Tolling Especially When the Court Denied Plaintiff's Motion In Part.

Plaintiff argues that equitable tolling is appropriate because Footbridge's objection to her request for the names and contact information of all potential class members constituted "affirmative misconduct."  Davis Mem. at 17.  As an initial matter, Plaintiff requested far more than contact information.  In addition to each individual's name, address, and telephone number, she requested each individual's week-by-week payroll records, as well as their personnel files.  Further, as Footbridge pointed out in its opposition to Plaintiff's motion to compel, numerous courts have held that even basic contact information of absent class members is not discoverable prior to conditional certification.

Agreeing with Footbridge that many of Plaintiff's requests were objectionable, the Court denied Plaintiff's motion in substantial part, and required Footbridge to produce only the individuals' contact information. Thus, Plaintiff's re-assertion of her claim that Defendants' objections were "a baseless resistance to discovery" is contrary to the Court's own ruling. Davis Mem. at 17.

Moreover, given the improper use to which Plaintiff has put this contact information, Footbridge's objections are all the more reasonable. As demonstrated by Plaintiff's actions since receiving the contact information, this information was always intended to be used to send out Plaintiff's unilateral notice and circumvent the Hoffman-LaRoche process. Plaintiff, therefore, has unclean hands and should be denied all requests for equitable relief. Bird v. Centennial Ins. Co., 11 F.3d 228, 234 (1st Cir. Mass. 1993) ("One must come into a court of equity with clean hands in order to secure relief . . . .") (quoting Peabody Gas & Oil Co. v. Standard Oil Co., 284 Mass. 87, 187 N.E. 112, 113 (Mass. 1933)); Cirotto v. Trader Publ. Co., 2000 U.S. Dist. LEXIS 22181, at *21 (S.D. Ohio Aug. 18, 2000) ("the doctrine of equitable tolling is grounded in principles of equity, and '[a] cardinal maxim of equity jurisprudence is that he who comes into equity must come with clean hands.'") (quoting Banks v. Rockwell International North American Aircraft Operations, 855 F.2d 324, 327 (6th Cir. 1988)).

Looked at another way, Plaintiff is essentially arguing that unless she is allowed access to this contact information in order to send a notice *before* conditional certification is granted, the Court must apply equitable tolling. Numerous courts have rejected this argument and held that a defendant's objection to providing the contact information of other class members does not justify equitable tolling. To rule otherwise would strip the FLSA statute of limitations of all meaning. As stated in Prentice v. Fund for Pub. Interest Research, Inc., 2007 U.S. Dist. LEXIS 71122, at *10 (N.D. Cal. 2007), "[i]f refusal to disclose contact information is sufficient basis to grant equitable tolling, either the FLSA statute of limitations is meaningless or the Courts are reading a disclosure requirement into the FLSA where the statute does not contain such a requirement. Neither outcome is appropriate." See also

13

Madrid v. Peak Constr., Inc., 2009 U.S. Dist. LEXIS 77493 (D. Ariz. July 22, 2009) ("the Ninth Circuit does not mandate equitable tolling where defendants refuse to provide contact information of potential collective action members"); Amendola, 558 F. Supp. 2d at 480 (rejecting argument that a defendant's objection to providing class contact information prior to conditional certification could justify equitable tolling); Goudie v. Cable Communs., Inc., 2008 U.S. Dist. LEXIS 91313, at *6-7 (D. Or. Nov. 7, 2008) (same); Gerlach v. Wells Fargo & Co., 2006 U.S. Dist. LEXIS 24823, at *16-17 (N.D. Cal. Mar. 28, 2006) (same).  As recognized in Amendola, allowing a plaintiff to distribute notice prior to conditional certification allows the plaintiff to dictate the scope of the collective action in the Complaint.  Because the Plaintiff can improperly expand the scope of the collective action in the Complaint, this practice leads to "excessive litigation costs that grossly outweigh the benefits that can be justly achieved through the litigation."  Amendola, 558 F. Supp. 2d at 480.

Plaintiff cites three cases that she claims hold that objecting to production of class member contact information prior to conditional certification justifies equitable tolling.  Davis Mem. at 17.  One of the three cases, however, says no such thing.  In Quintanilla v. A&R Demolition, Inc., 2006 U.S. Dist. LEXIS 39198 (S.D. Tex. June 13, 2006), the defendant did not object to producing contact information prior to conditional certification.  Instead, *after conditional certification was granted*, the defendant initially disclosed the information for only 212 of the 611 class members, resulting in a delay of 31 days in distributing the notice.  Id. at *5-6.  The defendant did not even contest that equitable tolling was appropriate for this 31-day period and as a result the request was granted by the Court.  Id. The Court, however, denied equitable tolling during the Court's consideration of the motion to certify the collective action.  Id. at 10.  Given these facts, Quintanilla has no applicability to this case.

The two remaining cases cited by Plaintiff do not hold that such discovery objections equal "affirmative misconduct" needed to justify equitable tolling.  Adams v. Inter-Con Security Systems, Inc., 242 F.R.D. 530 (N.D. Cal. 2007) did not state that objecting to such requests was improper.  In

fact, Adams stated that defendants are not required to turn over this information prior to conditional certification.  Id. at 543.  Nevertheless, Adams reached the conclusion that defendants who choose to object to such requests must pay for it in the form of equitable tolling of the purported class members' claims.  Id.  Adams has been described as an "anomaly" and has been squarely rejected by other courts.  Goudie, 2008 U.S. Dist. LEXIS 91313, at *6-7 ("The Adams result is an anomaly . . . because the FLSA "does not require . . . [d]efendants to provide contact information for potential plaintiffs until after the court certifies the collective action.") (quoting Prentice); Prentice, 2007 U.S. Dist. LEXIS 71122, at *10 ("The Court respectfully disagrees with Judge Patel's approach" to the equitable tolling issue in Adams); Amendola, 558 F. Supp. 2d at 480 (expressly declining to follow Adams in ruling that equitable tolling would not apply).[10]  Moreover, even the flawed reasoning of Adams would not support equitable tolling to the date of the Complaint.  The statute would be tolled, at most, from the date of Defendant's discovery objection through the date that Defendant produced contact information for those individuals to the Plaintiff.  Adams, 242 F.R.D. at 543 (tolling statute of limitations from 30 days after class members' contact information was requested until date such information was provided).

Plaintiff also cites Nash v. CVS Caremark Corp., 2010 U.S. Dist. LEXIS 50831 (D.R.I. Feb. 9, 2010), to argue that a defendant should not be allowed to "bleed" liability out of an action by objecting to Plaintiff's request for contact information.  Davis Mem. at 16.  However, Nash made no such ruling.  Instead, Nash addressed the defendant's repeated attempts to "pick off" the named plaintiffs in an FLSA collective action through a Rule 68 offer of judgment, which defendant argued mooted the claim of these plaintiffs.  Id. at *12-15  The Court merely held that these tactics could not be used to moot the

---

[10] Plaintiff also cites Baldozier v. Am. Fam. Mut. Ins. Co., 375 F. Supp. 2d 1089 (D. Colo. 2005).  Baldozier contains no analysis whatsoever of the requirements of equitable tolling and provides little if any reasoning behind its decision to allow equitable tolling.  Further, Baldozier, a decision from the District of Colorado, obviously did not apply the First Circuit standard for equitable tolling.  Also, Baldozier has been interpreted to mean that Notice is only appropriate after conditional certification has been granted.  Smith v. Pizza Hut, Inc., 2009 U.S. Dist. LEXIS 111604 (D. Colo. Nov. 16, 2009) ("I am persuaded that the Vaszlavik and Baldozier cases embody the better practice of requiring conditional certification of the collective action prior to allowing notices to be sent to potential collective action class members").

claims of the named plaintiffs, because it would repeatedly and improperly delay the point at which the collective action could be conditionally certified.  Id. at 15.  Clearly, these tactics are far different than Footbridge's legally-supported objection to a discovery request.

      **C.**      **Footbridge Complied With All FLSA Notice Requirements and Thus Any Alleged Failure Cannot Constitute a Basis for Equitable Tolling.**

Plaintiff's claim that the class' claims are equitably tolled due to Footbridge's alleged failure to post the U.S. DOL FLSA notice fails for several reasons.  Davis Mem. at 20.  First, because Plaintiff did not include this allegation in her Complaint, she cannot rely on it to establish equitable tolling.  Powell v. Carey Int'l, Inc., 483 F. Supp. 2d 1168, 1176 (S.D. Fla. 2007) (citing Wasco Prods. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006) (plaintiff seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings)).  Moreover, several courts have held that the failure to post FLSA Notice does not, in fact, justify equitable tolling.  Powell, 483 F. Supp. 2d at 1176 (holding that plaintiffs, as a matter of law, could not equitably toll the FLSA statute of limitations based on a defendant's alleged failure to post the FLSA poster); Antenor v. D&S Farms, 39 F. Supp. 2d 1372 (S.D. Fla. 1999) (because the FLSA poster makes no mention of the two-year statute of limitations, failure to post it does not toll the statute).  See also Archer v. Sullivan County, Tenn., 1997 U.S. App. LEXIS 33052, at *13-14 (6th Cir. 1997) (employer's failure to provide required Department of Labor notice does not alone provide a basis for equitable tolling).

Moreover, Footbridge has, in fact, complied with FLSA posting requirements.  Footbridge has displayed the relevant FLSA poster at its headquarters, and Plaintiff does not allege otherwise.  See Springer Decl. ¶ 4; O'Donnell Decl. ¶ 4.  Further, where, as here, employees are assigned to work at another employer's premises where the FLSA poster is already displayed, no additional posting or distribution of the FLSA poster is required.  Veerkamp v. U.S. Security Associates, Inc., 2006 U.S. Dist. LEXIS 71368, at *18 (S.D. Ind. Sept. 29, 2006) ("[A]n employer who assigns employees to work at another employer's location need not duplicate FLSA and parallel notice requirements."); Hann v.

Crawford & Co., 2005 U.S. Dist. LEXIS 21233, at *15 (W.D. Pa. Aug. 9, 2005) ("where the employees of a company are working 'in another employer's office,' and the FLSA notice is already conspicuously posted in compliance with § 516.4, no additional positing of the notice is required.") (quoting U.S. DOL Opinion letter dated March 3, 2003); Cortez v. Medina's Landscaping, 2002 U.S. Dist. LEXIS 18831, at *15 (N.D. Ill. Sept. 30, 2002) (employee was aware of FLSA rights where "plaintiff-employee worked for another employer who complied with the notice requirement").

Tellingly, neither Plaintiff, nor the affiants her attorneys have recruited, **even allege** that their worksites lacked the required FLSA poster, or that they did not see such a poster.  Plaintiff's affidavits are completely silent on this issue.  The likely reason is that the worksites of these individuals **did** post the required FLSA notice, as Footbridge has already confirmed as to the work site of at least one of Plaintiff's affiants.  Springer Decl. ¶ 5, and Ex. A thereto, Affidavit of Melvin Daniels.  In any event, as it is Plaintiff's burden to justify equitable tolling, Plaintiff's motion must be denied.

The cases cited by Plaintiff do not address situations where the employee works at another worksite.  Cortez, in fact, stated in dicta that where an employee works on the premises of another, the employer need only show that the other employer displayed the necessary FLSA poster.  Id. at *15. Cortez granted tolling where there was an **undisputed** failure to post FLSA notice.  Cortez also stated that even where notice is not posted, the statute is not tolled indefinitely, but only until the plaintiff becomes "generally aware" of FLSA rights.  Id. at *12.  In Blake v. CMB Construction, 1993 U.S. Dist. LEXIS 21181 (D.N.H. Mar. 30, 1993), also cited by Plaintiff, it was also undisputed that the employer failed to post the required FLSA notice through the third day of trial.  Id. at *7.

Here, however, Plaintiff's allegations fall short of what is necessary to establish equitable tolling based on the alleged failure to post the FLSA notice.  Because Plaintiff has not alleged, much less presented evidence, that the FLSA notice was not posted at **her** worksite (or the worksites of those who submitted affidavits), her motion for equitable tolling cannot be granted.  Moreover, because Footbridge

employees worked in different job sites across the country, the Court would need to examine whether the FLSA poster was displayed at each work site to determine if equitable tolling applied to that individual.  Consequently, any alleged failure to post FLSA notice could not apply on a classwide basis.

> **D.     Footbridge Did Not Mislead its Employees and Therefore Equitable Tolling is Inappropriate.**

As established above, intentional deception is necessary to justify equitable tolling.  Footbridge has not engaged in any such deception.  Plaintiff alleges only three isolated instances of allegedly misleading statements to employees, and claims these statements justify equitable tolling for the entire purported class.  As an initial matter, the affidavits offered by Plaintiff alleging these misleading statements do not identify the individual with whom the affiant spoke, making investigation of the allegation extremely difficult.  Significantly, if the individual who allegedly made the statements was not authorized to do so, nor an agent of Footbridge's, the statements are irrelevant to plaintiff's argument.  Regardless, to whatever extent that any statements were made to individuals regarding their lack of eligibility for overtime, if made by an authorized agent, such statements were made due to Footbridge's good faith belief, described above, that these employees fell under the Computer Professional exemption to the FLSA.  Footbridge Tr. at 20-22, 85.  At the time, Footbridge believed these individuals were exempt and therefore may have informed these three employees of this view.  Clearly, this does not constitute the type of intentional deception required to establish equitable tolling.

The cases cited by Plaintiff are inapposite.  For example, in <u>Henchy v. City of Absecon</u>, 148 F. Supp. 2d 435 (D.N.J. 2001), the Court did not rule that equitable tolling applied.  Rather, it simply denied the defendant's motion for summary judgment on the statute of limitations, stating that equitable tolling **_might_** apply where the employer had (1) not posted the requisite FLSA notice; and (2) made "repeated assurances" that overtime was being paid properly.  <u>Id.</u> at 439.  Moreover, <u>Henchy</u> was an individual action.  The same was true in <u>Blake</u>, 1993 U.S. Dist. LEXIS 21181, at *15-17 (applying equitable tolling to individual plaintiff based on failure to post FLSA notice and employer's repeated

misrepresentations regarding proper overtime pay).  In neither case did the Court apply equitable tolling to a class of employees based on alleged misrepresentations made to one person, as Plaintiff would have the Court do here.  These statements could, at most, toll the statute only as to the individuals to whom the statements were made and cannot possibly justify equitable tolling as to the entire class.

Plaintiff also claims that, when Footbridge changed its pay policy and began paying hourly employees time and a half for overtime, it was required to essentially ***admit*** that it had previously been in violation of the FLSA.  However, Plaintiff has not cited a single case where a defendant was required to admit to employees that it changed a pay practice because it had violated the FLSA.  As established above, the mere fact that Footbridge changes its payroll policy cannot be used as not a basis for assigning liability.  E.g. <u>Liger</u>, 2008 U.S. Dist. LEXIS 9098, at *7.

## IV.    PLAINTIFF'S SUGGESTED NOTICE SHOULD BE MODIFIED

In the event the Court approves notice, Plaintiff's proposed notice is unnecessarily biased and must be modified to reflect judicial neutrality.  <u>Hoffmann-La Roche</u>, 493 U.S. at 174.  First, any notice must correct the misleading statements Plaintiff's counsel have made to Footbridge employees regarding a prior FLSA suit against a Footbridge executive.  Such corrective notice is appropriate where, as here, a party has made false statements to class members to influence their decision.  <u>See</u> <u>Ruggles</u>, 591 F. Supp. 2d at 164 ("misleading communications" during the notice process "may be countered by court-authorized notice") (quoting <u>Hoffmann-La Roche</u>, 493 U.S. at 171-72).

Also, to ensure neutrality, any notice should not contain a heading bearing the name of this Court and the caption of this case.  <u>Prentice</u>, 2007 U.S. Dist. LEXIS 71122, at *14 ("Including the full caption may give a false impression of judicial endorsement of Plaintiffs' position where none exists." (citation omitted); <u>Boyle v. Barber & Sons, Co.</u>, 2004 U.S. Dist. LEXIS 29168, at *13-14 (D. Mo. 2004) (including caption "could result in the appearance of judicial sponsorship of the notice at a stage where no determination has been made on the merits of the case").  Courts that have allowed captions to

appear on the notice have ruled that "the notice must include conspicuous language, *immediately below the caption*, that the Court has not taken any position on the merits of the case and that the mere distribution of notice does not necessarily mean that the plaintiff class will ultimately prevail." Delgado v. Ortho-McNeil, Inc., 2007 U.S. Dist. LEXIS 74731, at *11 (C.D. Cal. Aug. 6, 2007).

Putative class members should also be advised they may be responsible for court costs if the claim is unsuccessful. See Camp v. The Progressive Corp., 8 Wage & Hour Cas. 2d 477, 482 (E.D. La. 2002) (notice must include sentence concerning possible liability for costs). Plaintiff's Notice contains no such information. It is also important to alert recipients to their own potential involvement in the action, including a statement that, if they join the lawsuit, they may be required to provide documents, answers to interrogatories, sit for a deposition, or testify in Court. The inclusion of this provision is critical as many plaintiffs who join the action, but later realize they must answer interrogatories or sit for a deposition, may decide they do not want to participate in the lawsuit and withdraw consent forms, as happened in Masson v. Ecolab, 2005 U.S. Dist. LEXIS 18022, at *32 (S.D.N.Y. 2005).

The proposed notice also contains no deadline for submitting opt-in forms. Ingram v. Coach USA, Inc., 2008 U.S. Dist. LEXIS 5935, at *22 (D.N.J. Jan. 28, 2008) ("A deadline ensures that the universe of potential claimants is known and the subjects of supplemental discovery needed to proceed to trial are identified and completed sufficiently in advance of the trial date."). Assuming the Court approves notice, as stated above, only a truncated notice period is warranted, and the Court should set a 30-day deadline from the mailing of the Notice to file a consent to sue form with the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be DENIED.

Respectfully submitted,

FOOTBRIDGE ENGINEERING SERVICES, LLC
THE FOOTBRIDGE COMPANIES, LLC

By their attorneys,

/s/ Douglas J. Hoffman
Douglas J. Hoffman (BBO # 640472)
William J. Anthony (Pro Hac Vice)
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025; (617) 367-2155 (fax)
hoffmand@jacksonlewis.com

Dated: June 15, 2010

## CERTIFICATE OF SERVICE

This is to certify that on June 15, 2010, a copy of the foregoing document was electronically filed with the United States District Court for the District of Massachusetts through its Electronic Case Filing system.

/s/ Douglas J. Hoffman
Jackson Lewis LLP

4813-8286-1830, v.  2